Madden, Judge,
delivered the opinion of the court:
This is one of several suits brought by the plaintiff tribe of Indians pursuant to a special jurisdictional act. In this suit the plaintiff seeks to recover interest which, it claims,, the Government caused the plaintiff to lose over a period from 1890 to the present time on certain interest-bearing funds belonging to the plaintiff but held in the Treasury of the United States. The stated reason for the loss and the liability therefor is that there were several separate funds of the plaintiff’s money in the Treasury, five bearing no interest; two bearing 4%; and two, 5% interest. The-plaintiff claims that when there was occasion for the Government to spend money on behalf of the Tribe, the non-interest-bearing funds should have been spent first, the 4% funds next, and the 5% funds last. We have found that this practice was not always followed and that substantially less-interest accrued to the Tribe as a result. The question for *16 decision is whether the Government’s failure to follow the practice gives the plaintiff a right to recover in this suit.
The special act confers jurisdiction on this court to hear, determine, adjudicate, and render final judgment on
* * * all legal or equitable claims of whatsoever nature which the Menominee Tribe of Indians may have against the United States, arising under or growing out of any treaties, agreements, or laws of Congress, or out of any maladministration or wrongful handling of any of the funds, land, timber, or other property or business enterprises belonging to said tribe or held in trust for it by the United States, or otherwise; including, but without limiting the generality of the foregoing, * * * claims for damages resulting from the improper or unlawful expenditures of tribal trust funds, including trust funds created by the Act of April 1,1880, entitled “An Act to authorize the Secretary of the Interior to deposit certain funds in the United States Treasury in lieu of investment” (21 Stat. L. 70), and the Act of March 22,1882, entitled “An Act authorizing the sale of certain logs cut by the Indians of the Menominee Reservation in Wisconsin” (22 Stat. L. 30), and the Act of June 12,1890, entitled “An Act to authorize the sale of timber on certain lands reserved for the use of the Menominee Tribe of Indians, in the State of Wisconsin” (26 Stat. L. 146), and the Act of March 2S, 1908, entitled “An Act to authorize the cutting of timber, the manufacture and sale of timber, and the preservation of the forests on the Menominee Indian Reservation in the State of Wisconsin” (35 Stat. L. 51), and the Act of February 12, 1929, entitled “An Act to authorize the payment ox interest on certain funds held in trust by the United States and Indian tribes” (45 Stat. L. 1164); * * *
The first interest-bearing fund originated in the Act of 1880, referred to in the jurisdictional act. As shown in finding 2, the United States, in 1836, by treaty provided that $76,000 should be allowed to the plaintiff tribe and invested in some safe stock, the income from which was also to be invested until such time as, in the judgment of the President, the income from the accumulated stock could be usefully applied to the payment of annuities as provided in the treaty, or some other purpose beneficial to the Indians. The money was invested in state and federal bonds. The Act of *17 1880 authorized the Secretary of the Treasury to deposit the proceeds of the redemption of the bonds in the Treasury, instead of reinvesting the proceeds, and provided that interest should be paid upon these deposits at the rate stipulated by treaties or prescribed by law. In 1881 a deposit of $153,039.38 was made in the Treasury, in a fund called “Menominee Fund,’’.which bore interest at 5% per annum. This fund was never encroached upon, and no complaint is made of its management.
The act of 1890, referred to in the jurisdictional act, and in 'finding 2, provided for the sale of timber from the plaintiff’s reservation and for the deposit in the Treasury of one-fifth of the proceeds in a non-interest-bearing fund and four-fifths in a fund bearing 5% interest. This latter fund became known as the “Menominee Log Fund.” The interest, as it accrued, was placed in a non-interest-bearing fund. The two 4% funds and the other non-interest-bearing funds arose out of similar legislation which is outlined in the findings.
The Secretary of the Interior has had frequent occasion to make expenditures on behalf of the Indians, and out of their funds, for the general support'and welfare of the tribe, as for health, education, maintenance of the agency, etc.; for per capita payments; and for the expense of the care and sale of timber and lumber. The various acts of Congress authorizing these expenditures used slightly differing language to indicate what moneys could be drawn upon for these expenses. For example, the act of 1890 empowered the Secretary to advance money for the expense of cutting and marketing timber “out of any money in the Treasury belonging to said Indians.” The act of 1906 authorized the payment of the expense of cutting and sawing timber to be paid “out of the funds of the said Menominee tribe of Indians now on deposit in the United States Treasury.” Looking at all the statutes authorizing expenditures of the plaintiff’s money, we find that none of them expressly restrict the expenditures to either non-interest-bearing funds or interest-bearing funds. The statutes enacted between 1890 and 1927 authorizing per capita payments would not have permitted such payments from two of the non-interest- *18 bearing funds, since they permitted such payments to be made out of, and, apparently, only out of, tribal funds created by the Acts of 1890 and 1908. But there were two other non-interest-bearing funds which were set up under those acts, from which the per capita payments could have been made, so far as those funds were sufficient.
The evidence, largely in the form of accounts furnished by the Comptroller General, shows that if the Secretary of the Interior had, so far as the several funds were sufficient, and so far as the statutes authorizing expenditures permitted, spent the non-interest-bearing funds first and the 4% funds next, before spending any of the 5% funds, a substantially larger amount of interest would have accrued for the plaintiff’s benefit.
Section 3 of the jurisdictional act provides that “At the trial of said suit the court shall apply as respects the United States the same principles of law as would be applied to an ordinary fiduciary and shall settle and determine the rights thereon both legal and equitable of said Menominee Tribe against the United States * * The defendant urges that if this provision of Section 3 is construed as intended to have any substantial effect, it becomes unconstitutional as an illegal interference by Congress with the judicial function of the court.
We think this contention is without merit. Congress is the lawmaking branch of the Government, and laws made by it are not unconstitutional because they are special, applicable to only one or some persons, rather than of general application, or because they are retrospective and applicable to fact situations which have occurred before their enactment, rather than prospective, in their operation. The cases cited by the defendant were cases where the effect of the special, or retroactive, legislation was to deprive a private person of a right which he had acquired under the law which was in effect when the transaction occurred. They contain expressions to the effect that retroactive legislation is not true legislation, since it does not fit the classical definition of a law as “a rule of civil conduct,” the conduct having already occurred before the “law” was enacted.[1] We think that the *19 true reason for unconstitutionality of legislation, where it has been found in such cases, is in its deprivation of litigants of existing rights, rather than in its asserted attempted exercise by the legislature of judicial power. A court is' exercising judicial power in the true sense when it takes a rule of law laid down by the legislature in advance, of the litigation and applies it to a state of facts proved to the court. The fact that the rule of law is so definite and certain, as it is likely to be when made for a special situation, that the court’s task is not a very onerous one, does not, in itself, violate the constitutional separation of powers.
We have no doubt that special acts of Congress, and even though retrospective in their operation, are constitutional, if they confer rights on private litigants against the Government, which rights are intended by Congress to fulfill a legal or moral obligation of the Government. See Indians of California v. United States, 98 C. Cls. 583, 599. We have no problem here, such as the Supreme Court of the United States had in the case of United States v. Klein, 13 Wall. 128, of an attempt by Congress, by the enactment of a statute while litigation was pending, to control the court’s decision. This court dealt with a similar problem in the case of Allen Pope v. United States, No. 45704 (100 C. Cls. 375), where the statute attempted to direct the rehearing, and the decision in a specified manner, of a case in which a final judgment had already been rendered.
We further think that the provision of Section 3 of the jurisdictional act concerning the principles applicable to an “ordinary fiduciary” add little to the settled doctrine that the United States, as regards its dealings with the property of the Indians, is a trustee. In Seminole Nation v. United States, 316 U. S. 286, Mr. Justice Murphy, speaking for the Supreme Court said
* * * this Court has recognized the distinctive obligation of trust incumbent upon the Government in its dealings with these dependent and sometimes exploited people.
This Court’s decision in the case of The Ottawa and Chippewa Indians v. United States, 42 C. Cls. 240, recognizes *20 the same principle. We will, therefore, test the conduct of the Government, in its handling of the funds of the plaintiff Indians, by the standards applicable to a trustee. Our question is whether, according to the terms of the jurisdictional act, there was “any maladministration or wrongful handling of any of the* funds” of the plaintiffs by the Government.
We think there was “wrongful handling.” The Government, instead of investing the money, which it collected for the Indians, in the bonds of other obligors, as an ordinary trustee would have been required to do, authorized itself by statute to put the money into its own treasury, in effect to borrow the money from the Indians, giving them its promise to pay interest on some of the funds. A private trustee who borrowed the trust money for his own use would, by that conduct, be guilty of a breach of trust. But the plaintiff does not assert that conduct as a breach of trust by the Government. However, the Government, as debtor to and quasi trustee for the Indians, was under a duty to see to it that the property of the Indians — that is, their claims against the Government — were productive of a return to them somewhat comparable to the return which they would have received on trust funds.
An arm’s-length debtor who owes his creditor one debt which does not carry interest, and another which does, can direct that his payment shall be applied to the latter debt, in the absence of a contrary agreement. He can thus save himself some interest and deprive his creditor of some return on his interest-bearing claim. But a debtor who stands in the position of a trustee or fiduciary toward his creditor, as the Government did here, must manage the transaction from the opposite standpoint. He must so manage the transaction as to keep the creditor’s claim productive, and, because he is the debtor, productive at his own expense. His position as “debtor-with-the-duties-of-a-trustee,” as the Indians might call it, is an anomalous one, difficult from an ethical standpoint. But the Government voluntarily assumed that position, and by the jurisdictional act has consented to be held to the standards of that position.
*21 We need not decide whether, if former Congresses had required of the Secretary of the Interior a violation of the fiduciary duties which we have defined, the Congress which enacted the jurisdictional act would, by its language, have given us the power to adjudge that those former Congresses had been guilty of a breach of trust. The various acts of Congress authorizing expenditures from funds of the tribe did not repudiate the trust obligation. Under those acts the Secretary of the Interior had the power to comply with the trust obligation, i. e., to spend the non-interest-bearing funds first, to whatever extent they were available and sufficient. It would be fair to suppose that Congress expected him to do that, and thus fulfill the Government’s duty as a quasi trustee. But whether Congress expected that, or was not conscious of the problem, the Secretary, acting for the Government, was under a duty to act in harmony with the Government’s position as a fiduciary, and he was not prevented from doing so by the statutes under which he acted.
We conclude, therefore, that to whatever extent the Secretary of the Interior could have, in the course of prudent management of the affairs of the Indians, and without impairing funds which he reasonably thought it was necessary to keep supplied for the purpose of meeting authorized expenditures, used the non-interest-bearing funds or those bearing the lower rate of interest, and instead used' funds bearing interest, or a higher rate of interest, the Government is under a duty to pay to the plaintiffs the interest’ thereby lost by them. The amount of the loss will be determined in further proceedings under Buie 39 (a) of this court.
It is so ordered.
Whitaker, Judge; and Littleton, Judge, concur.
Jones, Judge; and Whakey, Chief Justice, took no part in the decision of this case.

 E. g., Merrill v. Sherburne, 1 N. H. 199, 203.