Madden, Judge,
delivered the opinion of the court:
This is one of several suits brought by the Menominee Tribe of Indians under the special jurisdictional Act of Congress of September 3, 1935, c. 839, 49 Stat. 1085, as amended by the Act of April 8, 1938, c. 120, 52 Stat. 208. The jurisdictional act, in section 1, confers jurisdiction upon this court
* * * to hear, determine and adjudicate and render final judgment on all legal or equitable claims of whatsoever nature which the Menominee Tribe of Indians may have against the United States arising under or growing out of * * * any maladministration or wrongful handling of any of the funds, land, timber, or other property or business enterprises belonging to said tribe or held in trust for it by the United States, or otherwise; * * *
The act provides in section 3 that at the trial the court shall apply, as respects the United States
* * * the same principles of law as would be applied to an ordinary fiduciary and shall settle and determine, the rights thereon both legal and equitable of said Menominee Tribe against the United States notwithstanding lapse of time or statute of limitations. * * *
This suit is brought to recover damages for alleged maladministration on the part of the Government, as trustee and *39 guardian of the property of the plaintiff in connection with the salvaging of a large amount of valuable timber on the plaintiff’s reservation, which timber was blown down by a cyclone on July 16, 1905. The basis of the plaintiff’s claim is that the blown down timber contained many million feet of valuable lumber; that the timber could have been saved and marketed if care had been taken to log it and dispose of it promptly; that the Government had assumed guardianship and control over the plaintiff’s property, and held the title to it in trust for the plaintiff; that it was the Government’s duty to exercise the care and diligence of a guardian or trustee to protect the property interests of the plaintiff in the timber; that instead of protecting the plaintiff’s interests adequately, the Government negligently failed to make arrangements for the logging and saving of the timber; that logging did not even begin until more than two years after the blow-down; that the Government made improvident contracts for the logging which made it unnecessarily expensive; that the contracts as made were not enforced by the Government against the contractors, who failed to log much of the down timber, logged instead a large amount of green timber, failed to deliver many of the logs to the place where they had contracted to deliver them, and overscaled the logs that they did cut; that after the logs were cut, the Government negligently failed to arrange to have them sawed into lumber until many were worthless or greatly depreciated in quality and value, so that the lumber did not bring enough to repay the plaintiff its money which had been laid out in logging and transporting the timber and sawing the lumber. The plaintiff points to the provision of section 3 of the jurisdictional act, quoted above, which provides that the court shall apply, as respects the Government “the same principles of law as would be applied to an ordinary fiduciary”, and insists that the conduct of the Government fell well below that standard.
The Government, for its defense, denies that it was negligent in its dealing with the plaintiff’s property; places upon the plaintiff itself the blame for losses incurred in connection with the letting and performance of the contracts for the logging of the blown down timber, since the contracts were let by the Business Committee of the tribe, as permitted by *40 an act of Congress and the consent of the Secretary of the Interior; and urges that as to the provision of the jurisdictional act applying to the Government the standards of conduct required of an ordinary fiduciary, it is unconstitutional as a direction to the court as to how it must decide the case.
As to the standard of conduct which should be applied to the Government, it having consented to be sued, we have said in the companion case of Menominee Tribe of Indiana v. The United States, No. 44298, decided this day, that the Government owes to the Indians the duties of a trustee, in the care and protection of their property, and that the special provision of section 3 of the jurisdictional act, which same act was the basis of our jurisdiction in that case, seemed to add little to what would have been the Government’s obligations in the absence of section 3. We also said in that case that Congress had the power in cases such as these, to enact special and even retroactive legislation.
We have concluded, as appears from our findings, that the Government was, in its management of the plaintiff’s blown down timber, negligent in several particulars, and that the plaintiff suffered substantial losses as a result of that negligence. The fact that the Government delegated a part of that management to the Business Committee of the tribe does not exonerate the Government from its responsibility. The act of 1906 provided
That the Secretary of the Interior be, and he is hereby, authorized to permit the Business Committee of the Menominee Tribe of Indians in Wisconsin to cause to be cut into logs and hauled to suitable places for sawing and cause to be scaled, under such rules and regulations as he may prescribe, the dead and down timber * * *
This statute did not amount to an emancipation, pro tanto, of the plaintiff tribe. The Secretary of the Interior published regulations concerning the contracts, and required each contract to be submitted for approval. If the contracts were prejudicial to the plaintiff’s interests he should not have permitted them to be made. He had supervision over the performance of the contracts, and should not have accepted, as performance, the badly done and unfinished work which he did accept. In Seminole Nation v. United States, 316 U. S. *41 286, tbe Supreme Court rejected a defense similar to the one here under discussion, saying, p. 297,
Payment of funds at the request of a tribal council which, to the knowledge of the Government officers charged with the administration of Indian affairs and the disbursement of funds to satisfy treaty obligations, was composed of representatives faithless to their own people and without integrity would be a clear breach of the Government’s fiduciary obligation.
Here, as in the Seminole ease, the fact that some members of the tribe profited from the transaction does not disable the tribe from complaining that it was improper management by the Government to permit these individuals to so profit, out of the tribe’s property.
The plaintiff is entitled to recover. The amount of its damages, and of offsets, if any, may be determined in further proceedings under Rule 39 (a) of this court.
It is so ordered.
Whitaker, Judge; and Littleton, Judge, concur.
Jones, Judge; and Whaley, Chief Justice, took no part in the decision of this case.