**MENOMINEE TRIBE OF INDIANS v.
UNITED STATES.**

No. 44296.

Court of Claims.

March 5, 1945.

Andrew E. Stewart, of New York City (Richard E. Dwight, of New York City, Ernest L. Wilkinson and John W. Cragun, both of Washington, D. C., and Dwight, Harris, Koegel & Caskey, of New York City, on the brief), for plaintiff.

Benjamin F. Pollack, of Washington, D. C., and Norman N. Littell, Asst. Atty. Gen. (Raymond T. Nagle, of Washington, D. C., and Walter C. Shoup, of Washington, D. C., on the brief), for defendants.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHITAKER, Judge.

This is one of several suits brought by plaintiff growing out of the defendant's administration of its affairs. This one involves interest on the "Menominee Log Fund." The plaintiff had on deposit in the Treasury of the United States a fund known as the "Menominee Log Fund," upon which defendant had agreed to pay interest at 5 per cent. Withdrawals were made from this fund, but when reimbursement was first made the sum repaid was deposited in what is known as the "Menominee 4% Fund." Later all withdrawals from the 5 per cent fund were restored, except for $152,704.88. Interest on this amount has been credited to the Indian tribes at 4 per cent instead of at 5 per cent. The plaintiff sues for the difference of 1 per cent, plus interest on this interest.

On June 12, 1890, Congress passed an Act, 26 Stat. 146, authorizing the cutting of a certain portion of the timber on the Indian reservation and for the sale thereof. One-fifth of the "net proceeds of sales" was to be used for the benefit of the Indians under the direction of the Secretary of the Interior, and the residue was to be deposited in the Treasury of the United States at 5 per cent interest, the interest to be paid to the tribe per capita, or expended for their benefit under the direction of the Secretary of the Interior.

In 1905 a cyclone blew down a lot of the timber on plaintiff's reservation. On June 28, 1906, 34 Stat. 547, Congress authorized this timber to be cut into logs by the Indians and authorized the Secretary of the Interior to make contracts with portable-mill owners to come upon the reservation and saw the logs into lumber. Such mill owners were to be paid a sum not in excess of $3.50 per thousand feet board measure. The expenses of cutting the logs and sawing them into lumber were to be paid out of the funds of the tribe on deposit in the Treasury, the sums withdrawn to "be reimbursed from the sale of the lumber as herein provided." It was further provided that "from the proceeds of the sales of such lumber there shall be deposited in the Treasury of the United States to the credit of the said Menominee tribe of Indians the amount of money paid out of said fund as the expense of cutting, sawing, piling, and grading said lumber." One-fifth of the "net proceeds" were to be used for the benefit of the Indians under the direction of the Secretary of the Interior, and the balance was to be deposited in the Treasury of the United States at 4 per cent interest.

It was found impossible to induce satisfactory mill owners to enter into contracts to saw the logs into lumber at the price fixed in the Act, and so on March 28, 1908, Congress passed an Act, 35 Stat. 51, authorizing the Secretary of the Interior "to cause to be cut and manufactured into lumber the dead and down timber, and such fully matured and ripened green timber as the forestry service shall designate." To this end the Secretary was authorized to build suitable sawmills and buildings and to construct necessary roads and make necessary improvements in streams. The lumber manufactured from the timber was required to be sold to the highest and best bidder for cash, and it was provided that "the net proceeds of the sale of such lumber and other material shall be deposited in the Treasury of the United States to the credit of the tribe entitled to the same. Such proceeds shall bear interest at the rate of four per centum per annum * *."

All expenses incurred under the Act of 1906 were paid out of the "Menominee Log Fund" and two non-interest-bearing funds denominated "Interest on Menominee Log Fund" and "Fulfilling Treaties with Menominees, Logs." Likewise, after the passage of the Act of March 28, 1908, the ex-

penses of the erection of sawmills and buildings and for the construction of roads and improvement of streams and for the operation of the sawmills and other expenses were paid out of these funds. After the timber was sold the gross proceeds of the sales were not deposited in the funds from which they had been withdrawn, but in a fund known as the "Menominee 4% Fund."

The propriety of making withdrawals from a fund bearing interest at 5 per cent and making repayments to a fund bearing interest at 4 per cent was questioned, and the matter was referred to the Comptroller of the Treasury, who rendered an opinion holding this illegal. Thereupon, the Secretary of the Interior in 1912 transferred $79,623.89 of the 4 per cent fund to restore the fund for "Fulfilling Treaties with Menominees, Logs," and the balance of $999,455.51 was restored to the "Menominee Log Fund." Thereafter, further withdrawals were made from the "Menominee Log Fund," but all subsequent receipts were deposited in that fund. The total amount withdrawn from it from the beginning of operations under the 1906 Act through 1917 was $3,583,365.30. The total amount restored to this fund was $3,430,660.42, a deficit of $152,704.88. The 4 per cent fund was sufficient at the close of the year 1917 to have restored this deficit.

The defendant filed an answer and counterclaim in which it alleged that no amount should have been transferred from the 4 per cent fund to the 5 per cent fund and that it was improper to have deposited receipts in the 5 per cent fund, but that the excess of receipts over operating expenses should have been deposited in the 4 per cent fund.

It does not seem to us to be open to question that it was improper to have made withdrawals from the 5 per cent fund and to have made reimbursement to a fund bearing a lesser rate of interest.

■■ The Acts of 1906 and 1908 are in pari materia and should be construed together. The Act of 1908 was supplementary to the Act of 1906. It was passed because the provisions of the 1906 Act for the making of contracts with private mill owners for the sawing of the logs into lumber had proven impracticable. The Act of 1906, authorizing withdrawals from the 5 per cent and other funds, expressly required their repayment to these funds, and

for the deposit in the 4 per cent fund only of the "net proceeds," to wit, the amount left after reimbursement of the withdrawals had been made. The Act of 1908 provided for deposits in the 4 per cent fund only of the "net proceeds" of the sale of timber; it did not provide for the deposit in this fund of the gross proceeds. It is clearly implied from it that any sums withdrawn from any fund for operations under the Act should be restored to that fund, and only the balance left, to wit, the "net proceeds," should be deposited in the 4 per cent fund. The Act of 1908 standing alone should be so construed, but read in connection with the Act of 1906 the construction seems inescapable.

■ Moreover, it must be remembered that the defendant stood in a fiduciary relationship to the plaintiff (Seminole Nation v. United States, 316 U.S. 286, 297, 651, 62 S.Ct. 1049, 86 L.Ed. 1480), and that the jurisdictional Act requires us to apply "as respects the United States the same principles of law as would be applied to an ordinary fiduciary." The defendant, the fiduciary, had in its treasury the plaintiff's money, upon which it was obligated to pay 5 per cent interest. When it withdrew money from this fund to carry on a business for the plaintiff it was, of course, prohibited from making restorations of the amount withdrawn to a fund bearing a lesser rate of interest. By doing so it profited by paying plaintiff 1 per cent less interest than it was obligated to pay. This is violative not only of the provisions of the Acts of 1906 and 1908, but also of its fiduciary obligations.

The defendant in its brief does not undertake to defend the position taken in its answer and counterclaim; it concedes that the expenses of operations should have been repaid to the 5 per cent fund; but it does say that the Act of 1908 did not require the defendant to restore to that fund such part of the withdrawals from it as were required for the making of the permanent improvements, such as the erection of the mill and buildings, the building of roads, and improvement of streams. It says that only the withdrawals for operating expenses were required to be restored. However this may be, it was, of course, obligatory on the defendant to set aside a reserve for depreciation to replace the capital assets that would eventually be worn out from use. The accretions to this re-

serve, at least, should have been deposited in the account from which the money was withdrawn to make the capital investment. The Act authorizes the deposit in the 4 per cent fund of only the "net proceeds." The "net proceeds" are what is left after deducting the expenses of operations, which includes depreciation on the capital assets employed in earning the income. The sawmill was built back in 1909—35 years ago. Reasonable depreciation upon it and upon the other improvements made would by this time equal the original capital investment. The total amount withdrawn from the fund for the capital investments made should have been restored, at least by this time.

So much, as least, is required by the Acts of 1906 and 1908; but defendant stood in a fiduciary relationship to plaintiff, and as a fiduciary it was under the obligation to use funds in its hands in the way most beneficial to plaintiff. It was prohibited from using them for its own benefit. This required it to make restitution of the amounts withdrawn from the 5 per cent fund, instead of borrowing these amounts from plaintiff at a lesser rate of interest.

. It is conceded that funds were available at the end of 1917 to have reimbursed the fund in full. It follows the plaintiff has been deprived of 1 per cent interest on the deficit of $152,704.88 since that time.

■ Plaintiff in its petition says that under the Act of February 12, 1929, 45 Stat. 1164, 25 U.S.C.A. § 161a et seq., it is entitled to 4 per cent interest on the deficit of 1 per cent interest that should have been paid on the amount of $152,704.88. In Menominee Tribe of Indians v. United States, 97 Ct.Cl. 158, 161, we held that the Act of 1929 had no application to a fund representing interest which had accrued on other funds. Plaintiff in its requested findings of fact does not now ask for interest on this interest. Under the authority of the above-mentioned case, we hold that plaintiff is not entitled to recover on this part of its claim.

■ The defendant devotes a large part of its brief to a defense not raised in its answer and counterclaim, to wit, that it was not until after the statute of limitations had run that the plaintiff made claim that the 5 per cent fund should have been reimbursed for expenses incurred under the Act of 1906.

Congress on September 3, 1935, passed an Act, 49 Stat. 1085, authorizing plaintiff to bring suit for the amounts it claimed were due it by defendant. A petition was filed pursuant to this Act on September 2, 1937, in which plaintiff plead all the claims it thought it had against the defendant.

Following this, Congress on April 8, 1938, passed an Act 52 Stat. 208, authorizing the filing of separate petitions covering each of plaintiff's claims. On December 1, 1938, thirteen petitions were filed. One of them was for loss of interest on the "Menominee Log Fund." This complained only of withdrawals from this fund for operations under the Act of 1908 and did not mention withdrawals under the Act of 1906. However, on the same date plaintiff filed a bill for a general accounting by defendant. Then, when the Comptroller General's report showed withdrawals from the 5 per cent fund for operations under the 1906 Act, later supplemented by the 1908 Act, plaintiff filed a motion for leave to amend its petition for loss of interest on the Menominee Log Fund by consolidating with it its petition for a general accounting, insofar as withdrawals from this Menominee Log Fund were concerned. This motion was granted. It was properly granted because plaintiff had filed within time a petition giving it the right to recover the interest on any withdrawals from this fund that had not been repaid, to wit, the petition for a general accounting. In that suit it was not necessary for plaintiff to point to any specific wrongful act of the defendant; it was a petition by the "ward" for a general accounting by its "guardian."

This defense is not well taken.

Plaintiff is entitled to recover 1 per cent interest on $152,704.88 from the close of the fiscal year ending in 1917 until final judgment in this case.

The court reserves for further proceedings under rule 39 (a) of this court the determination of the exact amount of the recovery and of the offsets, if any. It is so ordered.

WHALEY, Chief Justice, and MADDEN and LITTLETON, Judges, concur.

JONES, Judge, took no part in the decision of this case.