## MENOMINEE TRIBE OF INDIANS v. UNITED STATES.

No. 44300.

Court of Claims.

Oct. 7, 1946.

Ernest L. Wilkinson, of Washington, D. C. (Dwight, Harris, Koegel & Caskey, Richard E. Dwight and Andrew E. Stewart, all of New York City, and John W. Cragun, of Washington, D. C., on the brief), for plaintiff.

Wilfred Hearn, of Washington, D. C., and General J. Edward Williams, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHITAKER, Judge.

Plaintiff sues for interest to which it claims it is entitled under the Act of June 12, 1890, 26 Stat. 146, and the Act of March 28, 1908, 35 Stat. 51.

Under the first of these Acts the defendant undertook to employ individuals of the plaintiff tribe to cut the timber on plaintiff's lands, and it agreed to sell the logs so cut for plaintiff's account. One-fifth of the net proceeds it agreed to deposit in its Treasury, to be used for plaintiff's benefit. The other four-fifths was to be funded in the Treasury and was to draw interest at 5 per cent per annum, which interest was to be paid to the tribe per capita.

Under the second of these Acts, that of March 28, 1908, defendant agreed to operate a sawmill for plaintiff's benefit, and to deposit the net proceeds from its operation in the Treasury, to bear interest at 4 percent per annum.

The Act of 1890 appropriated $75,000 to pay the expenses of the first year of operations. This money was to be repaid out of the first proceeds of the sale of logs. Thereafter, money to pay the expenses of operation was to be and was withdrawn from any of plaintiff's funds in defendant's hands. This was to be done in advance of the operations. When the logs and lumber were sold, the total amount received was deposited, sooner or later, in the above-mentioned interest-bearing accounts. Interest thereon has been paid from the time it was "covered" into the Treasury. Some time elapsed between this time and the time of its actual receipt. It is for the interest which accrued in the interim that plaintiff sues.

The Acts creating the interest-bearing funds read in pertinent part as follows. The Act of 1890 reads:

"* * * The residue of said proceeds shall be funded in the United States Treasury, interest on which shall be allowed said tribe annually at the rate of five per centum per annum. * * *"

The Act of March 28, 1908, reads:

"The net proceeds of the sale of such lumber and other material shall be deposited in the Treasury of the United States to the credit of the tribe entitled to receive the same. Such proceeds shall bear interest at the rate of four per centum per annum. * * *"

Plaintiff says that under the terms of the two Acts it is entitled to interest from the time defendant's agent first received the money. Defendant says that it is entitled to interest only from the time the money was deposited in the Treasury. Plaintiff replies that, even if this is so, the money was deposited in the Treasury as soon as the Indian Agent placed it in the sub-

treasury or a designated depository. Defendant says it was not deposited in the Treasury until a "covering" warrant was issued by the Secretary of the Treasury.

 We are of opinion that the defendant is obligated to pay interest only from the time the money was "covered" into the Treasury, and not from the time it was received by the Indian Agent.

The 1890 Act requires: "The residue of said proceeds shall be funded in the United States Treasury, interest on which shall be allowed said tribe annually at the rate of five per centum per annum." This means, of course, that interest shall be allowed the tribe from the time the money is "funded in the United States Treasury." Also, under the Act of 1908 this money was required to be "deposited in the Treasury of the United States," and it was provided that it shall bear interest at 4 per centum per annum. It has not been funded in the Treasury or deposited in the Treasury while it is in the agent's pocket, nor even, under the authorities, while it is in a designated depository or the sub-treasury. It has not been "funded in the United States Treasury" until a "covering" warrant has been issued by the Secretary of the Treasury.

The Act of September 2, 1789, 1 Stat. 65, 66, provides:

"* * * all receipts for monies received by him shall be endorsed upon warrants signed by the Secretary of the Treasury, without which warrant, so signed, no acknowledgment for money received into the public Treasury shall be valid."

Money has not been officially received in the Treasury until this so-called "covering" warrant has been issued.

This was fully recognized by the Supreme Court in the case of Knote v. United States, 95 U.S. 149, 154-156, 24 L.Ed. 442. The question presented in that case was whether or not the general pardon and amnesty granted by the President immediately following the War between the States entitled a person to recover the proceeds of his property which had been previously condemned and sold under the Confiscation Act, the proceeds from which had been deposited in the Treasury. It was held

that once funds have been "covered" into the Treasury they cannot be withdrawn therefrom except pursuant to an appropriation by Congress; but where they are still in the possession of an officer in the executive department, other than the Treasurer, or are in the custody of a judicial tribunal, they may be disposed of pursuant to executive or judicial order. The court said:

"* * * The property and the proceeds are not considered as so absolutely vesting in third parties or in the United States as to be unaffected by the pardon until they have passed out of the jurisdiction of the officer or tribunal. The proceeds have thus passed when paid over to the individual entitled to them, in the one case, or are covered into the treasury, in the other.

"The views here expressed have been applied in practice, it is believed, by the executive departments of the government. In 1856, the question was submitted by the Secretary of the Treasury to the Attorney General, whether, under a pardon of the President remitting a forfeiture to the United States, imposed by a judgment of a United States district court, the proceeds of the forfeiture deposited by the marshal in one of the public depositories to the credit of the United States, but not brought into the treasury by a covering warrant, could be refunded to the marshal, and through him to the party entitled, in execution of the remission granted by the President; and the Attorney General replied, that the pardoning power was completely vested in the President, and did not require in its exercise any aid from Congress, nor could it be curtailed by Congress, but that if the money had actually passed into the treasury, it could not be refunded without an act of Congress; for, the Constitution itself, in the provision that no money shall be drawn from the treasury but in consequence of appropriations made by law, opposed an insuperable obstacle to such a proceeding, and that this provision was of equal efficiency with the pardoning power, and operated as a restriction upon it. But the Attorney General held, and so advised the Secretary, that, if the money had only gone into the hands of some officer of the government,

and the right of third parties had not attached, it might be refunded. 8 Op.Att. Gen. p. 281."

See also Cummings v. Hardee, 70 App. D.C. 18, 102 F.2d 622, 625.

Under both the Act of 1890 and the Act of 1908 we think it was intended to pay interest on the funds only from the time they became available for appropriation by Congress. This was after they had been covered into the Treasury. Before that time they were subject to disposition by executive or judicial officers. Not until then had they become irrevocably the public money of the United States, available for such use as Congress chose to make of it.

However, we are equally clear that there was an implied agreement on the part of the defendant under both of these Acts to promptly deposit the funds in the Treasury, so that interest would begin to accrue without unnecessary delay. The defendant agreed to carry out the terms of the Act of 1890 and the Act of 1908 with that fidelity which a fiduciary owes his cestui. Menominee Tribe of Indians v. United States, 101 Ct.Cl. 10, and Menominee Tribe of Indians v. United States, 59 F.Supp. 137, 102 Ct.Cl. 555, 562 et seq.

The findings show that sometimes in the early days of operations nearly as much as three months elapsed from the time the money came into the hands of the Indian Agent or was deposited by him and the date of the "covering" warrant; and that interest was paid only from the date of the "covering" warrant. Good faith required that defendant's Indian Agent promptly deposit the money and promptly forward to the Treasury Department a certificate of deposit, and it further required that a "covering" warrant be issued as soon as it was reasonably possible, taking into consideration the complexity of the administration of the fiscal affairs of the Government of the United States. In other words, we think that the defendant's agreement incorporated in the Acts of 1890 and 1908 means that it agreed to pay interest from the time the moneys were funded or deposited in the Treasury of the United States, or could have been so funded or deposited by the exercise of reasonable diligence.

■ We are further of opinion that thirty days from the time the agent first received the money was ample time for defendant to have gone through the entire maze of administrative red tape preliminary to "covering" the money into the Treasury, and that, wherever it took a longer time plaintiff is entitled to recover interest in the interim.

■ The defendant has filed a counterclaim in which it alleges that the defendant deposited in the Menominee Log Fund, which drew five percent interest, four-fifths of the *gross* proceeds of the sale of the logs cut in accordance with the provisions of the Act of June 12, 1890, whereas this Act provided for the deposit in this fund of only four-fifths of the *net* proceeds. It, therefore, says that plaintiff has been credited with more interest than it is entitled to under the Act of 1890.

Our findings show that in order to pay the expenses of operations the defendant withdrew sums from plaintiff's accounts in the Treasury some of which bore interest and some of which did not; and then, when the logs were sold, instead of reimbursing, the accounts for the amounts withdrawn from them, one-fifth of the gross proceeds of the sale of the logs was deposited in the non-interest-bearing accounts, and four-fifths in the interest-bearing accounts. Thus, the non-interest-bearing accounts have been reimbursed only to the extent of one-fifth of the cost of operations, whereas withdrawals from these accounts have exceeded one-fifth of the cost of operations. The difference has been deposited in the interest-bearing accounts. Defendant is therefore correct in saying that plaintiff has been credited with interest to which it was not entitled under the Act of 1890. That Act required that the sums withdrawn for expenses of operations should first be reimbursed and that four-fifths of the net proceeds only should be deposited in the fund drawing 5 percent interest. The non-interest-bearing funds were not fully reimbursed, but, instead, the excess of the amount withdrawn over one-fifth of the cost of operations was deposited in the 5

percent fund. Plaintiff was not entitled to interest on this amount. Defendant, therefore, is entitled to an offset of the amount of this interest against any amount plaintiff may be entitled to recover.

Judgment is reserved for further proceedings under rule 39(a) of the court. It is so ordered.

WHALEY, Chief Justice, and JONES, and LITTLETON, Judges, concur.

MADDEN, Judge, took no part in the decision of this case.