Per Curiam:
The law partnership of Dwight, Royall, Harris, Koegel and Caskey of New York City have filed this petition and motion for an award of attorneys’ fees for their services in obtaining a judgment of $8,500,000 in favor of the Menominee Tribe of Indians. The judgment was entered by this court on July 13, 1951, pursuant to a stipulation whereby it was agreed that the United States would pay the $8,500,000 for the settlement of all claims of the Menominee Indians against the United States.
By a contract dated August 22,1935, between the Menomi-nees and a predecessor firm of lawyers, which contract in 1937 devolved upon the petitioner firm, and which, by renewals made in 1945 and 1950, is still in effect, the attorneys agreed to represent the Indians in their claims against the United States. The agreement provided that if the claims should be litigated the attorneys should receive “such compensation as based upon a quantum meruit as the court shall deem proper and reasonable”, but not to exceed ten percent of the amount recovered for the Indians. Section 7 of the Act of September 3,1935,49 Stat. 1085,1088, as amended by the Act of April 8, 1938, authorized this court to fix “such fees as it shall find reasonable” for the attorneys for the Menominees, but not to exceed the amounts stipulated in the contracts of employment.
The prosecution of the claims of the Menominees by these attorneys and their predecessors and associates went on for seventeen years. A total of thirty-eight lawyers have worked on the claims, fifteen of them being partners in law firms. The contract with the Menominees imposed upon the attorneys the duty to investigate, formulate and prosecute any and all claims of the Tribe brought to their attention by the Council of the Indians, or discovered by the attorneys “relative to their lands, or growing out of or in reference to annuities, installments or other moneys, claims, demands or things under law or treaties with the United States, or official acts of any officers thereof, or in any way connected with or due from the United States.”
One principal subject of claim was the way in which the Government had handled the timber on the Indians’ reservation in Wisconsin. The attorneys employed accountants and *494 forest engineers who studied the timber operations on the reservation as they had been conducted over a period of thirty-five years. The attorneys evaluated the information gained, obtained adequate enabling legislation giving this court jurisdiction, mastered the technicalities of forestry, lumbering and milling sufficiently to try the timber cases, and won them.
The attorneys’ work with Congress in securing enabling legislation was intelligent, energetic, and effective. They studied prior legislation and the defects in its operation, and obtained enabling statutes free from those defects, even inducing Congress to write into the statutes specific standards of duty by which the conduct of the Government should be measured, and specific directions as to how damages should be measured if those duties were found to have been violated. • The cases were more difficult and complex than most Indian cases. Most such cases are based upon treaties or agreements, so that one starts out with a text, and the question of liability is a question of whether the agreement written in the text has been complied with by the Government. The Menominee cases were based rather upon alleged Government mismanagement of property and funds of the Indians, and the standards of conduct in such cases are necessarily less definite than those set by a statute or a treaty. The success of the attorneys in inducing Congress to define standards in the enabling legislation was a valuable service to the Indians in this regard.
One suit involving some sixteen causes of action was filed in 1937. In 1938 amendments to the jurisdictional act were obtained permitting separate suits on the various, causes of action. The attorneys also opposed and helped to defeat proposed legislation which would have removed some of the advantages which they had obtained for the Menominees in the jurisdictional act.
Seven separate suits were filed pursuant to the 1938 amendments. In five of them there were long trials resulting in judgments in favor of the tribe. Our decisions appear in 101 C. Cls. 10; 101 C. Cls. 22, and 118 C. Cls. 290; 102 C. Cls. 555; 107 C. Cls. 23; and 117 C. Cls. 442. In all, they occupy 155 printed pages in our volumes of reports. Typewritten trans-: *495 cripts of testimony covering 10,484 pages were made and 1,253 exhibits were offered by the Indians and the Government, at the trials. Twenty-five printed briefs and fourteen typewritten briefs were presented on behalf of the Indians.
The diligence and skill with which the cases which went to judgment were tried, and the measure of success which the petitioner attorneys had in them was the inducing cause for the over-all settlement embodied in our judgment of July 13, 1951, for $8,500,000 in favor of the Indians. However, the fact that the cases were settled, at that stage, did not relieve the attorneys of much work. Most of the cases had been prepared for trial, tried and argued before the court before the settlement was arrived at.
It is our opinion that the petitioner attorneys and their associates managed these cases for the Indians with more than ordinary diligence and skill and that the recovery for the Indians would have been substantially smaller if it had not been for the extraordinary services of the attorneys. "We think the petitioners have earned and we award them a fee of $850,000.00.
It is so ordered.